J-S02020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID RIVERA | |
| Appellant | No. 3732 EDA 2015 |

Appeal from the Judgment of Sentence Entered  October 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0010239-2014

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                **FILED APRIL 13, 2017**

Appellant, David Rivera, appeals from the October 30, 2015 judgment of sentence imposing three to ten years of incarceration for possession with intent to deliver a controlled substance[1] ("PWID") and conspiracy.[2]  Counsel has filed a brief and petition to withdraw pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the judgment of sentence and grant counsel's petition to withdraw.

The trial court summarized the facts in its Pa.R.A.P. 1925(a) opinion:

---

[1]  35 P.S. § 780-113(a)(30).

[2]  18 Pa.C.S.A. § 903.

On July 8, 2014, at about 7:00 p.m., Philadelphia Police Officer John Seigafuse, a member of the 25th Police District's Narcotics Enforcement Team, was assigned with other team members to conduct a drug investigation in the 3300 block of N. 5th Street. Seigafuse and his partner, Officer Eric Crawford, commenced a surveillance of the 3300 block from inside their vehicle. Upon doing so, Officer Seigafuse observed Appellant speaking to a male later identified as Ronald Burke on the 3300 block of N. 5th Street. During the conversation, Appellant and Burke were approached by one Carl Paris after which both Appellant and Burke removed United States currency from their pockets and handed it to Paris, who put the money into his pants. Paris then walked to a gold Chevy Tahoe parked on the 500 block of Westmoreland Street.

Paris stayed in the car for a short while before returning to the 3300 block of N. 5th Street where he handed Appellant a small object. Officer Seigafuse saw Appellant ball his hand around the object, cross the street, and then place the object behind steps along a wall of a residence situated on the east side of the street. Appellant then sat on the steps of that residence as Paris walked up and down the block. After approximately ten minutes, Burke was approached by another male identified as Juan Ramos, who handed him money. Burke put the money in his pants' pocket, walked to a nearby abandoned property and retrieved small objects from a blue packet located in a pile of trash. Burke handed the objects to Ramos and then returned the blue packet to the trash pile. Ramos walked away and was stopped by members of the back-up team assisting Officer Seigafuse and his partner. From Ramos police recovered an orange-tinted Ziploc packet filled with what later testing revealed to be crack cocaine.

About five minutes after Ramos engaged in the transaction with Burke a man named Hector Torres engaged Burke in a similar transaction after which he was stopped. Recovered from Torres was one orange-tinted crack filled packet.

Shortly thereafter, a man named Angel Burros approached Appellant and began a short conversation during which Burgos handed Appellant money. After taking the money from Burgos, Appellant proceeded to the location where he earlier placed the object he received from Paris, picked up a clear plastic bag, and

- 2 -

removed an item handing it to Burgos. Buros was stopped by police who recovered a clear packet filled with powdered cocaine.

After observing this third transaction, Officer Seigafuse directed members of his back-up team to stop Appellant, Burke, and Paris. Police recovered $83.00 from Appellant. Police recovered $599.00 from Paris. Sergeant Wali Shabazz, who apprehended Appellant, then, proceeded, at Officer Seigafuse's behest, to the location where Officer Seigafuse saw Appellant place the object he received from Paris. Shabazz recovered a clear plastic bag filled with eleven packets containing powdered cocaine. In addition, Officer Seigafuse directed Officer Czapor to the location of the trash pile where Burke was observed obtaining small objects that he gave to Ramos and Torres. Officer Czapor recovered a blue aluminum foil packet that, *inter alia*, contained two orange-tinted Ziploc packets of crack cocaine that were identical to the packets recovered from Torres and Ramos. All of the items collected by police were placed on property receipts.

Following the apprehension of Appellant, Burke, and Torres, police obtained a search warrant to search the gold Tahoe. Upon executing the warrant, police seized $3,410 and a bag filled with seven bundles containing twelve clear packets of powdered cocaine, identical to the eleven clear packets recovered on 5th Street from behind the steps. In addition, Officer Seigafuse identified each of the males apprehended by his back-up officers.

Trial Court Opinion, 6/20/2016, at 2-4 (record citations omitted).

A jury found Appellant guilty of the aforementioned offenses after an August 2015 trial. The trial court imposed the aforementioned sentence on October 30, 2015. Appellant filed a timely post-sentence motion. The trial court denied the post-sentence motion on November 24, 2015. This timely appeal followed.

Before we address the merits, we consider whether counsel's brief and petition to withdraw comply with these requirements of **Anders** and **Santiago**:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Counsel must also advise the defendant of his rights to "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 936 A.2d 40 (Pa. 2007). We have reviewed counsel's filings and found them in compliance with the foregoing. We will now consider the merits.

The **Anders** brief addresses the sufficiency of the evidence in support of Appellant's PWID and conspiracy convictions. In particular, the **Anders** brief addresses whether the Commonwealth proved that Appellant was in constructive possession of any controlled substances, and whether the Commonwealth proved that Appellant formed an agreement with another

person to distribute controlled substances. These are the same issues Appellant raised in his Pa.R.A.P. 1925 concise statement of errors.

We review a challenge to the sufficiency of the evidence as follows:

When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

***Commonwealth v. Kane***, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011).

To sustain a conviction for PWID, "the Commonwealth must prove beyond a reasonable doubt only that, on a specific occasion, the defendant possessed a controlled substance he was not licensed to possess, and that he did so under circumstances demonstrating an intent to deliver that substance." ***Commonwealth v. Griffin***, 804 A.2d 1, 15 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005). "Intent may be inferred from an examination of the facts and circumstances surrounding the case." ***Id.***

Likewise, to sustain a conspiracy conviction, the Commonwealth must prove beyond a reasonable doubt the defendant: "(1) entered into an agreement to commit or aid in an a criminal act with another person or persons (2) with a shared criminal intent and that (3) an overt act was done

in furtherance of the conspiracy." ***Commonwealth v. Bostick***, 958 A.2d 543, 560 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009).

We have reviewed the ***Anders*** brief, the Commonwealth's brief, the record, and the trial court's opinion. Appellant did not file a response to counsel's petition to withdraw. We conclude the trial court's June 20, 2016 opinion thoroughly and accurately addresses the sufficiency of the evidence, and we adopt the trial court's analysis as our own. Our independent review of the record reveals no other issues of arguable merit. We therefore affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

*Appendix "A"*

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA : PHILADELPHIA COURT
: OF COMMON PLEAS
: CRIMINAL TRIAL DIVISION
:
v.                : CP-51-CR-0010239-2014

CP-51-CR-0010239-2014 Comm. v. Rivera, David
Opinion

DAVID RIVERA



7462612061

OPINION

**FILED**

JUN 2 0 2016

Criminal Appeals Unit
First Judicial District of PA

MCCAFFERY, J

David Rivera (hereinafter "Appellant") appeals from the judgment of sentence imposed by this Court on October 30, 2015. For the reasons set forth below, it is suggested that the judgment of sentence be affirmed.

**PROCEDURAL HISTORY**

In August, 2015, Appellant was tried by a jury and found guilty of Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver a Controlled Substance (hereinafter "PWID"), 35 P.S. § 780-113 § (A)(30), and Conspiracy to commit PWID, 18 Pa.C.S. § 903. On October 30, 2015, this Court imposed concurrent sentences of three to ten years' incarceration upon Appellant.

Following the imposition of sentence, Appellant filed a post-sentence motion which this Court denied on November 24, 2015. Appellant thereafter filed a notice of appeal and a court ordered Pa.R.A.P. 1925(b) statement. In his 1925(b) statement, Appellant asserts that the evidence is insufficient to sustain the PWID and Conspiracy convictions.

1

## FACTUAL HISTORY

On July 8, 2014, at about 7:00 p.m., Philadelphia Police Officer John Seigafuse, a member of the 25th Police District's Narcotics Enforcement Team, was assigned with other team members to conduct a drug investigation in the 3300 block of N. 5th Street. Seigafuse and his partner, Officer Eric Crawford, commenced a surveillance of the 3300 block from inside their vehicle. (N.T. 8/12/15, 52-53). Upon doing so, Officer Seigafuse observed Appellant speaking to a male later identified as Ronald Burke on the 3300 block of N.5[th] Street. (N.T. 8/12/15, 57). During the conversation, Appellant and Burke were approached by one Carl Paris after which both Appellant and Burke removed United States currency from their pockets and handed it to Paris, who put the money into his pants. (N.T. 8/12/15, 57-58, 62-63). Paris then walked to a gold Chevy Tahoe parked on the 500 block of Westmoreland Street. (N.T. 8/12/15, 58).[1]

Paris stayed in the car for a short while before returning to the 3300 block of N.5[th] Street where he handed Appellant a small object. (N.T. 8/12/15, 59). Officer Seigafuse saw Appellant ball his hand around the object, cross the street, and then place the object behind steps along a wall of a residence situated on the east side of the street. (Id). Appellant then sat on the steps of that residence as Paris walked up and down the block. (N.T. 8/12/15, 60, 63).

After approximately ten minutes, Burke was approached by another male identified as Juan Ramos, who handed him money. (N.T. 8/12/15, 64). Burke put the money in his pants' pocket, walked to a nearby abandoned property and retrieved small objects from a blue packet located in a pile of trash. (N.T. 8/12/15, 64). Burke handed the objects to Ramos and then returned the blue packet to the trash pile. (N.T. 8/12/15, 64). Ramos walked away and was stopped by members of the back-up team assisting Officer Seigafuse and his partner. (N.T.

---

[1] When Paris walked to the Tahoe, he went out of Officer Seigafuse's view and was then observed by Officer Osvaldo Toribo, a member of the back-up team. (N.T. 8/12/15, 126).

2

8/12/15, 64, 130-131). From Ramos police recovered an orange-tinted Ziploc packet filled with what later testing revealed to be crack cocaine. (N.T. 8/12/15, 64-65).

About five minutes after Ramos engaged in the transaction with Burke a man named Hector Torres engaged Burke in a similar transaction after which he was stopped. (N.T. 8/12/15, 67-68). Recovered from Torres was one orange-tinted crack filled packet. (N.T. 8/12/15, 68, 139).

Shortly thereafter, a man named Angel Burgos approached Appellant and began a short conversation during which Burgos handed Appellant money.[2] (N.T. 8/12/15, 68-69, 80). After taking the money from Burgos, Appellant proceeded to the location where he earlier placed the object he received from Paris, picked up a clear plastic bag, and removed an item handing it to Burgos. (N.T. 8/12/15, 69). Burgos was stopped by police who recovered a clear packet filled with powdered cocaine. (N.T. 8/12/15, 69-70, 146).

After observing this third transaction, Officer Seigafuse directed members of his back-up team to stop Appellant, Burke, and Paris. (N.T. 8/12/15, 70). Police recovered $83.00 from Appellant. (N.T. 8/12/15, 72, 195). Police recovered $599.00 from Paris. (N.T. 8/12/15, 164). Sergeant Wali Shabazz, who apprehended Appellant, then, proceeded, at Officer Seigafuse's behest, to the location where Officer Seigafuse saw Appellant place the object he received from Paris. Shabazz recovered a clear plastic bag filled with eleven packets containing powdered cocaine. (N.T. 8/12/15, 73, 192-193, 200). In addition, Officer Seigafuse directed Officer Czapor to the location of the trash pile where Burke was observed obtaining small objects that he gave to Ramos and Torres. (N.T. 8/12/15, 73). Officer Czapor recovered a blue aluminum foil packet that, *inter alia*, contained two orange-tinted Ziploc packets of crack cocaine that were identical to the packets recovered from Torres and Ramos. (N.T. 8/12/15, 73-75, 177). All of the

---

[2] Burgos was also referred to by the first name of Anthony.

3

items collected by police were placed on property receipts.

Following the apprehension of Appellant, Burke, and Torres, police obtained a search warrant to search the gold Tahoe. (N.T. 8/12/15, 83). Upon executing the warrant, police seized $3,410 and a bag filled with seven bundles containing twelve clear packets of powdered cocaine, identical to the eleven clear packets recovered on 5th Street from behind the steps. (N.T. 8/12/15, 84; 8/13/15, 21, 33). In addition, Officer Seigafuse identified each of the males apprehended by his back-up officers. (N.T. 8/12/15, 115, 188).

Appellant's mother, Iccia Estrella, testified that on the morning of his arrest she gave Appellant $100.00 to buy sneakers. (N.T. 8/13/15, 64-65). Ms. Estrella conceded that she did not know what Appellant did for the rest of the day. (N.T. 8/13/15, 66).

## DISCUSSION

In his 1925(b) statement, Appellant raises the following claims:

1. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT APPELLANT'S DRUG CONVICTION BECAUSE THE APPELLANT WAS MERELY PRESENT AND THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT POSSESSED ANY DRUGS WITH INTENT TO DELIVER THEM EITHER DIRECTLY OR CONSTRUCTIVELYOR THAT HE WAS AS AN ACCOMPLICE OR CO-CONSPIRATOR OF THE POSSESSORS OF THE DRUGS OR THAT HE AGREED WITH ANYONE TO POSSESS THE DRUGS?

2. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT APPELLANT'S CONSPIRACY CONVICTION BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT FORMED AN AGREEMENT WITH ANOTHER PERSON THE OBJECT OF WHICH WAS TO POSSESS OR DISTRIBUTE ILLEGAL DRUGS?

Appellant's Pa.R.A.P. 1925(b) Statement.

4

Appellant first claims that the evidence was insufficient to sustain his PWID conviction because the Commonwealth failed to prove that he possessed drugs or was an accomplice or co-conspirator. He also claims that the evidence was insufficient because it established only that he was merely present in the area where the investigation took place. His second issue challenges the sufficiency of the Conspiracy conviction claiming that the Commonwealth failed to prove that he entered an agreement with any other person the object of which was to possess illegal drugs.

In reviewing a claim that alleges that the evidence was insufficient to support a verdict, the Pennsylvania Supreme Court provided the following standard of review:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict... [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

Commonwealth v. Ratsamy, 934 A.2d 1233, 1235-1236 (Pa. 2007) (emphasis in original).

The Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. Duncan, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). A reviewing court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Id. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. Commonwealth v. Hartle, 894 A.2d 800, 804 (Pa. Super. 2006).

With regard to the PWID conviction our General Assembly has defined PWID as follows:

5

> [T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

> [T]o sustain a conviction [for PWID] the Commonwealth must prove beyond a reasonable doubt only that, on a specific occasion, the defendant possessed a controlled substance he was not licensed to possess, and that he did so under circumstances demonstrating an intent to deliver that substance. Intent may be inferred from an examination of the facts and circumstances surrounding the case. Factors which may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

Commonwealth v. Griffin, 804 A.2d 1, 15 (Pa. Super. 2002).

A "delivery" is "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102. To prove that a delivery occurred, the Commonwealth must prove that the defendant knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa.2004). PWID may be inferred from the facts and circumstances surrounding the case. Commonwealth v. Daniels, 999 A.2d 590, 595 (Pa.Super.2010). Factors that may be relevant to establish PWID include packaging, the form of the drug, and the defendant's behavior. Id.

Here, because the drugs were not found on Appellant's person, the Commonwealth was required to prove that he had constructive possession over them. Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983). To prove constructive possession, the Commonwealth must show

6

that the accused "exercise[d] a conscious dominion over the illegal [contraband.]" Commonwealth v. Valette, 613 A.2d 548, 550 (Pa. 1992). Conscious dominion is the "power to control the contraband and the intent to exercise that control." Id., citing Commonwealth v. Mudrick, 507 A.2d 1212, 1213 (Pa. 1986).

Constructive possession can be inferred from the totality of the circumstances. Id. In Commonwealth v. Macolino, 469 A.2d 132, (Pa. 1983), the court held that "it was reasonable for the fact-finder to conclude that the appellee maintained a conscious dominion over the cocaine found in the bedroom closet which he shared solely with his wife." Id. at 136. The Court also noted that the law prohibiting possession of contraband would not make sense if a person could store the contraband in a shared space to avoid prosecution. Id. Regardless, "the fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband." Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa. Super. 1996) (citing Mudrick, 507 A.2d at 1213-14).

Drawing all inferences in favor of the Commonwealth as the law requires, it is clear that the evidence was sufficient to sustain the verdict finding Appellant guilty of the charge of PWID. Here, the eleven packets of powdered cocaine were inside a bag Appellant received from Paris. Appellant was then observed placing the drugs against a building behind its stairs. Thus the jury concluded that he had actual possession of the cocaine packets, which was immediately accessible to Appellant and, in fact, was accessed by Appellant during his interaction with Burgos, who later was found in possession of a packet identical to those found inside the bag. The jury thus properly rejected the mere presence argument.

The evidence was more than sufficient to sustain Appellant's drug conviction because

7

Appellant had constructive possession of the bag and its eleven packets of cocaine. In addition, because the evidence was sufficient to establish beyond a reasonable doubt that Appellant possessed the drugs, his claim that he was not an accomplice or co-conspirator with the person or persons who possessed the drugs lacks merit. Because Appellant engaged in drug sales, there clearly was sufficient evidence that he possessed cocaine with the intent to deliver regardless of the existence of a conspiracy. Appellant's PWID conviction rests solely on his actions on the day of the police investigation and was not predicated on a theory of vicarious liability.

Accordingly, it is respectfully suggested that the instant claim be deemed lacking in merit.

In his second and final claim, Appellant argues that the evidence was insufficient to sustain his Conspiracy to commit PWID conviction because the Commonwealth did not prove that Appellant entered into an agreement the object of which was to possess or distribute illegal drugs. "To sustain a conviction for Criminal Conspiracy, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) entered into an agreement to commit or aid in an a [sic] criminal act with another person or persons (2) with a shared criminal intent and that (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Bostick, 958 A.2d 543, 560 (Pa. Super. 2008) (quoting Commonwealth v. Johnson, 920 A.2d 873, 878 (Pa.Super. 2007)).

The Commonwealth may sustain its burden of proving a conspiracy wholly by means of circumstantial evidence. Commonwealth v. Perez, 931 A.2d 703, 708 (Pa. Super. 2007).

> An agreement to commit a criminal act may be proven by reasonable inferences, but not by suspicion or speculation. Id. An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These

8

> factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

> \* \* \*

> Circumstances like an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy.

Id.

Applying the foregoing to the evidence presented at trial leads ineluctably to the conclusion that the Commonwealth sustained its burden of proving that Appellant conspired with, inter alia, Paris to sell cocaine. Appellant was observed giving United States currency to Paris who thereafter gave Appellant a bag that upon recovery by police contained eleven packets of cocaine. Paris remained in the area where Burke and Appellant were selling drugs acting as an overseer. Moreover, the eleven packets of drugs found in the bag recovered by police were identical to packets found in the Tahoe Paris was seen entering. The bag containing the eleven packets Appellant received from Paris most likely contained twelve individual packets of cocaine when Paris gave it to Appellant, as did each of the seven bundles found inside the Tahoe. It contained eleven packets when seized by police because Appellant sold a packet to Burgos. This evidence was more than sufficient to establish that Paris and Appellant were acting pursuant to an arrangement formed between the two. Thus, the evidence was sufficient to sustain Appellant's PWID conviction and it is suggested that Appellant's claim with respect to this issue be denied. See Commonwealth v. Perez, 931 A.2d 703 (Pa. Super. 2007) (evidence sufficient to prove appellant's guilt for PWID and conspiracy, where appellant sold drugs supplied to him by his cohort); Commonwealth v. McCall, 911 A.2d 992, 997 (Pa. Super. 2006) (evidence sufficient for

9

conspiracy to commit PWID where the appellant served as a lookout and held money for his cohort, even where he did not hold drugs).

**CONCLUSION**

Based on the foregoing, it is respectfully suggested that the judgment of sentence entered in this matter against Appellant be affirmed.

BY THE COURT,

Date: 6/17/16

Daniel D. McCaffery, J.

10